**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PAUL TURNER,
individually and on behalf of a class of
persons similarly situated,

        Plaintiff,

    vs.

MORTON'S RESTAURANT GROUP, INC.,

        Defendant.

Case No. 1:08 CV 01948

Judge Matthew F. Kennelly

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS CLASS ACTION COMPLAINT AND COMPEL ARBITRATION**

Plaintiff Paul Turner filed a Class Action Complaint against Defendant Morton's

Restaurant Group, Inc. ("Morton's") "on behalf of himself and all other current and former

'tipped' employees" for alleged unpaid overtime compensation, liquidated damages, attorneys'

fees and costs under Section 6(b) of the Fair Labor Standards Act of 1938, as amended (the

"FLSA"). Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and/or 12(b)(6), the

Complaint should be dismissed because, at the outset of his employment with Morton's of

Chicago[1], Turner acknowledged and agreed as a condition of his employment that any wage-

related dispute would be subject to individual arbitration before the American Arbitration

Association ("AAA"), expressly including any claims under the FLSA.  Turner's decision to

disregard this arbitration requirement, and file a lawsuit in this Court, violates his arbitration

---

[1] As an initial matter, Turner's Complaint incorrectly names Morton's as the Defendant employer, but Turner was employed by Morton's wholly-owned subsidiary, Morton's of Chicago/Wacker Place, LLC ("Morton's of Chicago").  (*See* Declaration of Angela D. Thomas, attached as Exhibit A.)

agreement and mandates an order dismissing the Complaint and compelling arbitration as the

exclusive remedy for Turner's claims.[2]

## I.    STATEMENT OF FACTS

Turner worked as a server for Morton's of Chicago/Wacker Place LLC (a subsidiary of

Morton's Restaurant Group, Inc.) from approximately January 11, 2005 until June 28, 2007.  On

or about December 13, 2004, prior to beginning his employment, Morton's provided Turner with

a copy of its "Mandatory Arbitration Policy and Procedure for Resolving Disputes Arising Out

of Its Employees' Employment Or Termination of Employment" (the "Arbitration Agreement"),

and required as a condition of employment that he agree to abide by the same concerning any

dispute, controversy, or claim arising out of his employment.  Paragraph A.1 of Turner's

Arbitration Agreement (attached as Exhibit 1 to Declaration) states, in relevant part, that:

> In the event of any dispute, claim, or controversy including, but not
> limited to, any dispute, claim, or controversy ("claims") arising out
> of Employee's employment or the cessation of such employment
> with Morton's of Chicago/Wacker Place, LLC ("Morton's"), any
> such claims, solely on an individual basis, shall be submitted to
> final and binding arbitration unless arbitration of such claims is
> prohibited by law.  Such claims include, but are not limited to, any
> federal, state, or local statutory claims including, but not limited to,
> claims pursuant to … the Fair Labor Standards Act, as amended….

Pursuant to paragraph A.2 of the Arbitration Agreement, the agreement to arbitrate is

enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.  The arbitration is to

be conducted by a neutral arbitrator in accordance with the AAA's Employment Arbitration

Rules.  In arbitration, the parties may raise any claims and defenses, and the arbitrator has the

---

[2] *See Vazquez v. Central States Joint Board, et al*, --- F.Supp.2d ---, 2008 WL 595859, * 23, 26, fn 18
(N.D.Ill. 2008) (observing "[t]he Seventh Circuit has declined to decide the procedural vehicle to be used when a
party brings a motion to dismiss a claim that is covered by an arbitration agreement", noting there is varying
authority in the federal courts for considering such motions under Federal Rules of Procedure 12(b)(1), 12(b)(3), or
12(b)(6), and concluding that regardless of which rule applies the court may properly consider matters outside the
pleadings).

authority to award any relief, that would be available in a court of law. The Arbitration Agreement also provides (in paragraph B.7) that "[t]his Policy does not permit the initiation of class claims or collective claims. Similarly, consolidation of claims brought by separate employees also is prohibited." (*See* Exhibit 1 to Declaration.)

On or about December 13, 2004, Turner signed the Arbitration Agreement's acknowledgement form (attached as Exhibit 2 to Declaration), stating he had received a copy of Morton's of Chicago's "Mandatory Arbitration Policy and Procedure for Resolving Disputes Arising Out of the Employee's Employment or Termination of Employment." The signed acknowledgment expressly states that Turner "understand[s] that the Arbitration Policy cannot be modified except in writing signed by both the President of Morton's and [Turner]," that it "supersedes any and all other agreements," and that by signing he agrees "to abide by the Arbitration Policy and rules contained therein…."

By letter dated January 11, 2005, Morton's of Chicago offered Turner employment as a server. The letter reiterated in the first paragraph that Turner's employment offer was "contingent upon," among other things, his "acceptance of … the mandatory Arbitration Policy." On January 20, 2005, Turner signed his acceptance of Morton's employment offer. (*See* Turner's signed acceptance of employment, attached as Exhibit 3 to Declaration.)

Turner commenced this suit on April 4, 2008, seeking to bring a class action on behalf of individuals Morton's employed in the United States from April 4, 2005 to the present whose compensation was affected by Morton's allegedly improper policy and practice of not paying the full amount of wages earned. The Complaint consists of two counts: the first asserts claims for unpaid overtime under the FLSA, and the second alleges that Morton's willfully violated the

FLSA.  All of Turner's claims in the Complaint arise from his employment as a server by Morton's of Chicago.

## II.    ARGUMENT

As a threshold matter, the FAA provides that arbitration clauses such as those in the Arbitration Agreement are enforceable as long as they meet the requirements of a valid contract under applicable state law (in this case, Illinois law (*see* Paragraph B.11, Exhibit 1 to Declaration)). *See, e.g., Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 366-67 (7th Cir. 1999) (stating that "[i]n determining whether arbitration agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts"). The Illinois Supreme Court has made clear that it will enforce pre-dispute arbitration agreements covering employment claims even if they are presented on a "take it or leave it" basis, *see Melena v. Anhueser-Busch, Inc.*, 219 Ill.2d 135, 152 (2006), and that arbitration agreements prohibiting class or collective claims, whether in litigation or arbitration, are enforceable "if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy in a cost-effective manner."  *Kinkel v. Cingular Wireless, LLC*, 223 Ill.2d 1, 41 (2006).

Because, as discussed below, each and every claim in Turner's Complaint is subject to arbitration under the Arbitration Agreement, because Turner is barred from initiating or maintaining class claims in litigation or arbitration, and because Turner may pursue his claims in a cost-effective manner, this Court should compel arbitration and dismiss Turner's Complaint with prejudice.  *See, e.g., County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 815 (7th Cir. 2006) (affirming dismissal of suit over arbitrable claim under Federal Rule of Procedure 12(b)(6)); *Hotel Employees and Restaurant Employees Intl. Union Welfare Fund v. Connecticut General Life Insurance Co*., Slip Copy, 2007 WL 1030454, *1-3 (N.D.Ill. 2007) (*sua sponte*

dismissing complaint under Rule 12(b)(3), noting that "because the parties have previously agreed to arbitrate any disputes before an arbitrator, they should not now be allowed to turn their back on that agreement, in favor of litigation in the federal court"); *Mason v. Bway Corp.*, Slip Copy, 2007 WL 329156, *3 (N.D.Ill. 2007) ("[W]here parties to a contract have agreed to arbitrate disputes … dismissal pursuant to Rule 12(b)(3) is appropriate."); *Lamb v. General Electric Consumer & Industrial*, 2006 WL 2228962, *1-2, 8-9 (N.D.Ind. 2006) (granting motion to dismiss complaint and compel arbitration under Federal Rule of Procedure 12(b)(1) where the only claim in lawsuit was covered by an arbitration agreement precluding plaintiff from filing suit in any court).

### A.     Turner's Claims Are Subject To Mandatory Arbitration.

In enacting the FAA, Congress created a body of federal substantive law that is applicable in both state and federal courts. *See Southland Corp. v. Keating*, 465 U.S. 1, 15 (1984). As both the U.S. Supreme Court and the Illinois Supreme Court have found, the FAA reflects a "liberal federal policy favoring arbitration agreements" that requires courts to "rigorously enforce" such agreements. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Melena,* 219 Ill.2d at 152. Courts have further emphasized that under the FAA arbitration agreements are enforceable except for state-law grounds for ordinary contract revocation, and that employment contracts are subject to the FAA. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122-24 (2001); *Melena,* 219 Ill.2d at 142. Indeed, the *Melena* court noted that, under Illinois law, the promises contained in employment arbitration agreements are not "illusory by virtue of the fact that [the employer] gave [the employee] little choice in the matter." *Melena*, 219 Ill.2d at 152; *see also Bess v. DirectTV, Inc.*, 2008 WL 740344, at *3.

Here, Turner's Arbitration Agreement requires (in paragraph A.1, Exhibit 1 to Declaration) that "any dispute, claim, or controversy ("claims") arising out of [his] employment or the cessation of such employment … shall be submitted to final and binding arbitration."  The same paragraph of the Arbitration Agreement specifically includes claims brought under the FLSA – the very statute under which Turner sues in this case – as claims subject to mandatory arbitration.

Nor is there any question that Turner entered into a valid and enforceable agreement to arbitrate.  Turner signed an acknowledgement form prior to being offered employment, by which he acknowledged receipt of the Arbitration Agreement and agreed to abide by its terms concerning any dispute arising out of his employment.  (*See* Exhibit 2 to Declaration.)  When Turner was offered employment, the offer was expressly conditioned upon Turner's agreement to abide by the terms of the Arbitration Agreement.  (*See* Exhibit 3 to Declaration.)  Turner signed his acceptance of this offer, and, thus, again agreed to the terms of the Arbitration Agreement.  (*See* Exhibit 3 to Declaration.)  And, after signing his offer letter, Turner was employed for two and a half years – all the while subject to the Arbitration Agreement.  *See Melena*, 219 Ill.2d at 152 (holding that, by working three years while subject to an arbitration policy, an employee both accepted the policy and received adequate consideration for his agreement to arbitrate disputes).[3]

---

[3]Under principles of equitable estoppel, Turner may not avoid his arbitration agreement with Morton's of Chicago by suing the parent entity, Morton's, for wage-related claims based solely on Turner's employment with Morton's of Chicago.  *See Affymax, Inc. v. Johnson & Johnson*, 420 F.Supp.2d 876, 881-83 (N.D.Ill. 2006) (finding plaintiff equitably estopped from avoiding arbitration agreement signed with a subsidiary by suing the parent entity over a dispute arising under plaintiff's agreement with the subsidiary). *See also Hughes Masonry Company, Inc. v. Greater Clark County School Building Corp, et al*, 659 F.2d 836, 839 (7th Cir. 1981) (finding plaintiff "cannot have it both ways" by attempting to hold defendant liable for failure to perform its obligations "and at the same time deny that [defendant] is a party to that agreement [giving rise to the obligations] in order to avoid arbitration of claims clearly within the ambit of the arbitration clause"); *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177-78 (2d Cir. 2004) (recognizing that "under principles of estoppel a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the

Significantly, where employees subject to similar arbitration agreements with Morton's and/or other Morton's subsidiaries have brought cases in state or federal court, the complaints have in every instance been dismissed and referred to arbitration before the AAA. *See, e.g., Ibrahim, et al v. Morton's Restaurant, Inc., Morton's of Chicago – North Miami Beach*, No. 04-20554-CIV (S.D. Fla. June 10, 2004) (order granting Morton's contested motion to compel arbitration) (attached as Exhibit B); *Johnson, et al v. Morton's Restaurant Group, Inc.,* No. 05-11058 (D. Mass. Jan. 9, 2006) (order dismissing case after Morton's filed motion compel arbitration and plaintiffs, thereafter, stipulated to dismissal and agreed to arbitrate) (attached as Exhibit C). Indeed, in most cases the employee claimants either have initially filed a demand for arbitration with the AAA without the need for court enforcement of their arbitration promises, or voluntarily agreed to withdraw their complaint and arbitrate all claims without the need for Morton's to file a motion to compel arbitration. Likewise, Turner's exclusive remedy for the employment-related claims asserted in his Complaint is to submit those claims to arbitration before the AAA under the Arbitration Agreement. Accordingly, Turner's Class Action Complaint should be dismissed.

> **B.** **The Prohibition of Class and Collective Claims Under the Arbitration Agreement Is Enforceable.**

To the extent Plaintiff argues to the contrary, the provision in the Arbitration Agreement prohibiting the initiation or maintenance of class or collective claims in litigation or arbitration does not make the Arbitration Agreement unenforceable. The Illinois Supreme Court rejected the view that class action waivers or bars in arbitration agreements render such agreements *per*

---

(continued…)

parties, the contracts they signed and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed") (internal quotations omitted).

*se* unconscionable, instead requiring the court to sustain such agreements provided "the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." *Kinkel*, 223 Ill.2d at 41 (internal quotations omitted).

While the *Kinkel* court ultimately found the class action prohibition in that consumer case to be unenforceable in the circumstances of that case, recent decisions interpreting *Kinkel* have found class action prohibitions enforceable where the claimant can bring a claim in a cost-effective manner, and where a full range of remedies are available.  For example, in *Harris v. The DirectTV Group, Inc*., Slip Copy, 2008 WL 342973 (N.D.Ill. Feb. 5, 2008), the court held the class action waiver in the parties' arbitration agreement was enforceable, in part because the plaintiff could recover statutorily authorized attorney's fees and costs if he prevailed in arbitration.  *Harris*, 2008 WL 34973 at *5.  The court further noted the arbitration agreement at issue imposed on the employee only a capped cost of $125 and "[did] not contain a confidentiality clause or a limit on the remedies available in arbitration, as did Cingular's provision in *Kinkel*."  *Id.*  Accordingly, the Court found the "arbitration provision is valid [and] must be enforced pursuant to the FAA."  *Id.*  In this case, Turner's arbitration costs are capped at the AAA's $150 initial filing fee for an individual, the Arbitration Agreement does not contain a confidentiality clause, nor does the Arbitration Agreement limit Turner's remedies available through arbitration.

Similarly, courts in other jurisdictions routinely hold arbitration agreements containing similar class action prohibitions enforceable, particularly in the employment context.  *See, e.g., Caley v. Gulfstream Aerospace Corp*., 428 F.3d. 1359, 1377-79 (11th Cir. 2005) (enforcing

mandatory arbitration provision in an FLSA case where arbitration policy, including its prohibition of class actions and limitations on discovery, was not unconscionable under Georgia law); *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (granting employer's motion to compel arbitration of an FLSA claim, rejecting plaintiff's argument that the inability to proceed collectively under the arbitration agreement deprived plaintiff of substantive rights available under the FLSA); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502-03 (4th Cir. 2002) (enforcing mandatory arbitration provision contained in an employment application, finding the arbitration clause was not unconscionable under West Virginia law despite its preclusion of class actions).

Here, just as in the *Gulfstream Aerospace, Countrywide Credit,* and *Labor Ready* cases, Turner can assert his claims under the Arbitration Agreement in a cost-effective manner. The Arbitration Agreement does not impose prohibitive costs on Turner. Indeed, Rule 48 of the AAA's Employment Arbitration Rules for disputes arising out of employer-promulgated arbitration plans requires employers to pay all arbitration costs after the employee pays the initial individual filing fee capped at $150.[4] *See also Cole v. Burns Intern. Security Services,* 105 F.3d 1465, 1484-85 (D.C. Cir. 1997) (stating that "where arbitration has been imposed by the employer and occurs only at the option of the employer - arbitrators' fees should be borne solely by the employer"). Thus, Turner's only arbitration cost will be the initial $150 filing fee payable to the AAA, which is consistent with Morton's historical practice in individual arbitrations under similar agreements with Morton's and/or Morton's subsidiaries – Morton's consistently has paid all arbitration costs after the employee-claimant's $150 filing fee to the AAA. *See Livingston, et*

---

[4] Under Rule 48 of the AAA's Employment Arbitration Rules, the employer is required to pay a $900 case filing fee, which is in addition to the $150 paid by the individual claimant; all of the arbitrator's compensation; all of the arbitrator's expenses, including travel; all administrative hearing fees and expenses of the AAA; hearing room rental fees; and all costs relating to proof and witnesses produced at the direction of the arbitrator.

*al v. Associates Finance, Inc., et* al, 339 F.3d 553, 557 (7th Cir. 2003) ("[T]he fact that Associates

agreed to pay all costs associated with arbitration forecloses the possibility that the Livingstons

could endure any prohibitive costs in the arbitration process."); *Countrywide Credit Indus., Inc.*,

362 F.3d at 300 (finding employees' "prohibitive costs argument has been mooted by

[employer's] representation to the district court that it would pay all arbitration costs" after $125

filing fee).  Moreover, Turner cannot claim prejudice by pursuing his claims in arbitration versus

litigation since the Arbitration Agreement expressly provides (paragraph A.2, Exhibit 1 to

Declaration) "[t]he arbitrator shall have the authority to award such relief … as may be available

in a court of law."  *See Pivoris, et al v. TCF Financial Corp. d/b/a TCF Bank*, Slip Copy, 2007

WL 4355040, *5 (N.D.Ill. 2007) (arbitration provision authorizing arbitrator "to award all

remedies permitted by the substantive law that would apply if the action were pending in court"

afforded claimant "the same rights to fee-shifting that she would have if her claim were pending

in court").  As such, there is nothing to prevent Turner from pursuing his claims in an individual

arbitration in a cost-effective manner under the Arbitration Agreement.

        At bottom, the Arbitration Agreement is both valid and enforceable.  Accordingly, the

Court should enforce the clear language of the Arbitration Agreement that Turner acknowledged

at the outset of his employment, dismiss the Class Action Complaint, and compel arbitration.

*See, Livingston,* 339 F.3d at 559 ("[H]aving found the [a]rbitration [a]greement enforceable we

must give full force to its terms" under section 4 of the FAA); *Jenkins v. First American Cash*

*Advance of Georgia, LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005) (noting that whether an

arbitration agreement is unconscionable because it precludes class action relief is a matter to be

decided by the court, and finding arbitration agreement with its class action waiver enforceable

under Georgia law).

### III.   CONCLUSION

For the foregoing reasons, Morton's respectfully requests this Court grant its Motion to

Dismiss Class Action Complaint and Compel Arbitration.

Dated: May 12, 2008                          Respectfully submitted,


                                             s/ Michael J. Gray
                                             Michael J. Gray, IL No. 06210880
                                             Brent D. Knight, IL No. 6257108
                                             Michael S. Ferrell, IL No. 6277458
                                             JONES DAY
                                             77 West Wacker
                                             Chicago, IL  60601-1692
                                             Telephone:    (312) 782-3939
                                             Facsimile:    (312) 782-8585
                                             mjgray@jonesday.com
                                             bdknight@jonesday.com
                                             mferrell@jonesday.com

                                             *Attorneys for Defendant*
                                             *Morton's Restaurant Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2008, I electronically filed the foregoing **Memorandum of Law in Support of Motion to Compel Arbitration and Dismiss Class Action Complaint** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

> Jeffrey Grant Brown
> Catherine P. Sons
> Converse & Brown, LLC
> 105 West Adams Street, Suite 300
> Chicago, Illinois  60603
>
> James X. Bormes
> Law Office of James X. Bormes, P.C.
> 8 South Michigan Avenue, Suite 2600
> Chicago, Illinois  60603
>
> Carol Coplan Babbitt
> Law Office of Carol Coplan Babbitt
> 35 East Wacker Drive, Suite 650
> Chicago, Illinois  60601

s/ Michael S. Ferrell
Attorney for Defendant

CHI-1647266v1

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PAUL TURNER,
individually and on behalf of a class of
persons similarly situated,

        Plaintiffs,

    vs.

MORTON'S RESTAURANT GROUP, INC.,

        Defendant.

Case No. 1:08-CV-01948

Judge Matthew F. Kennelly

## <u>DECLARATION OF ANGELA D. THOMAS</u>

I, Angela D. Thomas, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      My name is Angela D. Thomas. I am over the age of twenty-one and am otherwise competent to testify. The facts set forth in this declaration are based on my personal knowledge.

2.      I am employed by Morton's Restaurant Group, Inc. as the Human Resources Information Systems Manager, which is commonly referred to as the "HRIS Manager." I have held this position since May 1, 2000.

3.      As HRIS Manager, I am responsible for maintaining all employee personnel and payroll records, including tracking the receipt of all required pre- and post-hire documents for employees of Morton's or one of its subsidiaries, including Morton's of Chicago/Wacker Place LLC. Part of my responsibilities as HRIS Manager include ensuring that applicants for new employment complete and sign all required pre-hire and post-hire employment forms and other required paperwork, and that such documents are maintained in the employee's personnel file.

4.      Following a review of our personnel and payroll records maintained in the normal course of business, Morton's subsidiary, Morton's of Chicago/Wacker Place, employed Paul Turner from approximately January 20, 2005 until June 28, 2007 at its Wacker Place location which at the time he was hired was called the Michigan Avenue location.  At no point has Mr. Turner been an employee of Morton's Restaurant Group, Inc., or any other Morton's subsidiary or affiliated company.

5.      Among the policies and agreements that I am responsible for monitoring as HRIS Manager is Morton's of Chicago's "Mandatory Arbitration Policy and Procedure for Resolving Disputes Arising Out of Its Employees' Employment or Termination of Employment."  I can confirm the Arbitration Policy attached as Exhibit 1 is a true and correct copy of the Arbitration Policy in effect at Morton's of Chicago/Wacker Place beginning in November 2004 and continuing through the start of Paul Turner's employment on January 20, 2005.

6.      I have reviewed the form attached as Exhibit 2, which contains the "Receipt for Mandatory Arbitration Policy and Procedures for Resolving Disputes Arising Out of the Employee's Employment or Termination of Employment" signed by Paul Turner.  Exhibit 2 is a true and correct copy of the form signed by Paul Turner, acknowledging his receipt of the Arbitration Policy.  Since approximately the start of his employment on January 20, 2005, the attached form signed by Mr. Turner has been maintained in his personnel file in the normal course of business under my supervision.

7.      I have reviewed the letter attached as Exhibit 3 and it is a true and correct copy of the January 11, 2005 signed employment offer presented to Mr. Turner, and his January 20, 2005 signed acceptance.  A copy of this signed offer and acceptance of employment is maintained in Mr. Turner's personnel file in the normal course of business under my supervision.

- 2 -

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2008 in Chicago, Illinois.

_____
Angela D. Thomas

# Exhibit 1

**MORTON'S OF CHICAGO/WACKER PLACE LLC
MANDATORY ARBITRATION POLICY AND
PROCEDURE FOR RESOLVING DISPUTES ARISING OUT OF ITS
EMPLOYEES' EMPLOYMENT OR TERMINATION OF EMPLOYMENT**

A.                          <u>ARBITRATION OF CONTROVERSIES</u>

     1.      <u>When Arbitration is Required</u>

     In the event of any dispute, claim, or controversy including, but not limited to, any dispute, claim, or controversy ("claims") arising out of Employee's employment or the cessation of such employment with Morton's of Chicago/Wacker Place, LLC. ("Morton's"), any such claims, solely on an individual basis, shall be submitted to final and binding arbitration unless arbitration of such claim is prohibited by law.  Such claims include, but are not limited to, any federal, state, or local statutory claims including, but not limited to, claims pursuant to Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Employee Retirement Income Security Act of 1974, as amended; the Immigration Reform Control Act, as amended; the Americans With Disabilities Act of 1990, as amended; the Family and Medical Leave Act of 1993, as amended; the Occupational Safety and Health Act of 1970, as amended; the Age Discrimination in Employment Act of 1967, as amended (if applicable); the Fair Labor Standards Act, as amended; the Sarbanes-Oxley Act of 2002, as amended; the Illinois State Wage and Hour Laws, as amended; the Illinois Equal Pay Laws, as amended; the Illinois Use of Lawful Products in the Workplace Law, as amended; the Illinois Whistleblower Protection Act, as amended; the Illinois Human Rights Act, as amended; the Illinois AIDS Confidentiality Act, as amended; the Illinois School Visitation Rights Act, as amended; the Illinois Labor Relations Act, as amended; the Illinois Wage Payment and Collection Act, as amended; the Illinois Health and Safety Act, as amended; the Illinois Right to Privacy in the Workplace Act, as amended; the Illinois Joint Agency Rules on Sex Discrimination, as amended; the Illinois Joint Agency Rules on National Origin Discrimination, as amended; the Illinois Fair Employment Practices Commission Guidelines on Discrimination in Employment, as amended; the Illinois Human Rights Commission Interpretive Rules on Handicap Discrimination in Employment, as amended; any claim of retaliation in connection with a Workers' Compensation or a disability claim; and any contract, tort or public policy claims.  The Employee and Morton's shall each have the right to assert any claim or defense in arbitration which could be raised in a court of competent jurisdiction or before an administrative agency (if applicable), and shall be precluded from raising in any federal or state court of law or equity any claim or controversy or cause of action which could be raised in arbitration under this Policy.

1

2.    <u>Rights And Procedures Applying To Arbitration</u>

The following rights and procedures shall apply in any arbitration:

   a.    Each party shall have the right to assert any claims or defenses in the arbitration which could be raised in a court of competent jurisdiction;

   b.    Each party shall have the right to counsel of his/her choice;

   c.    The party that raises a claim in arbitration shall bear the burden of proof with respect to that claim;

   d.    The arbitrator shall have the authority to award such relief for a particular claim as may be available in a court of law;.

   e.    Except as otherwise provided herein, the arbitration shall be conducted in accordance with the then governing Employment Arbitration Rules of the American Arbitration Association ("AAA") in effect at the time a demand for arbitration is made; and

   f.    The agreement to arbitrate shall be enforceable pursuant to the Federal Arbitration Act, 9 U.S.C. §§1, <u>et</u> <u>seq</u>.

3.    <u>Demand For Arbitrator</u>

Each party shall have the right to demand arbitration by submitting to the other party a written demand which shall state (i) the claim asserted, (ii) the facts alleged to support the claim, (iii) the applicable statute or principle of law upon which the legal basis for the demand is premised, and (iv) the remedy being sought.  The party upon whom the demand is served shall respond to the demand, in writing, within twenty (20) days after receiving the demand.  Such response shall specifically admit or deny each factual allegation in the demand and set forth any counterclaims, cross claims, or defenses.  Failure to respond to a demand shall not act as a waiver of any defense to the claims or be deemed acquiescence to such claim.

4.    <u>Time For Demanding Arbitration</u>

For a claim that must be initiated in a court of law, any demand for arbitration will be timely only if submitted in writing within the time set in the applicable statute of limitations in which a court action would had to have been initiated for the claim. If the claim is one which had to be filed with an administrative agency, any demand for arbitration will be timely only if submitted in writing within the time set in the

applicable statute of limitations in which the claim would had to have been filed with the administrative agency.  For purposes of this paragraph, the date upon which the claim arose shall be the date of the event, occurrence, or happening giving rise thereto, or the date notice is given of the event, occurrence, or happening, whichever is earlier.  This time period shall not be extended by virtue of informal attempts to resolve the dispute.

5.    Selection Of Arbitrators

The parties shall attempt to agree upon an arbitrator to hear the dispute.  If agreement is not reached within thirty (30) calendar days of receipt of the demand for arbitration, the arbitrator shall be selected in accordance with the then governing Employment Arbitration Rules of the AAA.

6.    Discovery

In advance of the arbitration hearing, each party may request the other to produce documents and/or information by means of interrogatories, requests for admissions or depositions which are relevant, non-privileged and material to either party's claims or defenses.  Discovery and discovery disputes shall be resolved by the arbitrator in advance of the hearing and in accordance with the Federal Rules of Civil Procedure.  Each party may also issue subpoenas but must provide notice of any subpoena and a copy of such subpoena to any other party, in accordance with the Federal Rules of Civil Procedure.

7.    The Arbitration Hearing

The arbitration hearing shall take place in the State in which the Employee was then or last employed by Morton's, and shall continue on consecutive business days unless the parties agree otherwise.  The hearing shall be conducted pursuant to the Federal Rules of Civil Procedure and Federal Rules of Evidence.  The arbitration hearing shall be stenographically recorded at Morton's expense, unless the parties agree otherwise.  Each party shall have the opportunity to submit post-hearing briefs.  The party asserting the arbitration claim shall bear the burden of proof, unless otherwise specified by applicable law.

8.    Arbitrator's Decision And Award

The arbitrator shall issue his/her award within sixty (60) days of the close of the hearing or receipt of post-hearing briefs.  The arbitrator shall submit with the award an opinion which shall include findings of fact and conclusions of law.

The decision of the arbitrator shall be final and binding on the parties subject to A(10) below.  Any relief or recovery to which an Employee is entitled from any claims arising out of his/her employment or termination of employment shall be limited to that awarded by the arbitrator.

3

9.    <u>Claims Against Individual Supervisors And Other Agents of Morton's</u>

Any employee who commences a lawsuit against a current or former supervisor or other agent of Morton's in his or her individual capacity based upon any claim arising out of the Employee's employment or termination of employment, shall provide Morton's with written notice within ten (10) days of commencement of such action.  Any claim for arbitration will be timely only if brought within the time in which an administrative charge or complaint would had to have been filed if the claim is one which could be filed with an administrative agency.  If the arbitration claim raises an issue which could not have been filed with an administrative agency, then the claim must be filed within the time set by the appropriate statute of limitations. At the option of Morton's, any such claims alleged against such current or former supervisor or other agent of Morton's shall be submitted to final and binding arbitration pursuant to the arbitration provisions contained in this Policy.

Additionally, any lawsuit filed and served against any employee of Morton's by any other current or former Employee of Morton's based upon any claims arising out of such other current or former Employee's employment or termination of employment shall, at the option of Morton's, be submitted to final and binding arbitration pursuant to the arbitration provisions contained in this Policy.  Any Employee instituting such an action shall provide Morton's with written notice within ten (10) days of service of any such lawsuit.

10.    <u>Appeal of Arbitrator's Award</u>

The Arbitrator's decision may be appealed to a court of competent jurisdiction.  If there is such an appeal, the reviewing court shall review the Arbitrator's decision as if it is a court of appellate jurisdiction reviewing a lower court's decision after trial.

B.    <u>GENERAL PROVISIONS</u>

1.    <u>Notices</u>

Any notices to be given under this Policy by either party to the other, shall be effected by personal delivery in writing or by mail, registered or certified, postage prepaid with return receipt requested.  Any notice to Morton's shall be mailed to the Vice President/Human Resources, Morton's of Chicago, Inc., 350 W. Hubbard Street, Suite 610, Chicago, Illinois, 60610.  Any notice to an Employee shall be mailed to the Employee's last address on file  with the Human Resources Department.  Each party may change his, her or its address by written notice to the other party.  Mailed notices shall be deemed communicated as of five (5) days after mailing.

4

2.   <u>Entire Policy</u>

This Policy cannot be modified except in writing signed by both the Employee and the President of Morton's and supersedes any and all other agreements, either oral or in writing, express or implied, with respect to the subject matter covered by this Policy.

3.   <u>Partial Invalidity</u>

If any provision of this Policy is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall, nevertheless, continue in full force without being impaired or invalidated in any way.

4.   <u>Attorneys' Fees To Compel Arbitration</u>

If any party is required to file a lawsuit to compel arbitration pursuant to this Policy, or defend against a lawsuit filed in court contrary to this Policy's mandatory arbitration provision, such party, if successful, shall be entitled to recover his, her or its reasonable costs and attorneys' fees incurred in such an action, including costs and attorneys' fees incurred in any appeal.

5.   <u>Jury Trial Waiver</u>

If any claim is found not to be subject to this Policy and to the arbitration procedure, it shall be subject to a non-jury trial in the federal or state court that has jurisdiction over the matter at the courthouse closest to the site at which Employee is then or was last employed by Morton's, to the extent permitted by law.  The case will be heard by a judge without a jury because both the Employee and Morton's agree to waive any right to seek or demand a jury trial and would prefer to have any dispute decided solely by a judge of the court.

6.   <u>Charge Filing/Charge Conciliation/Related Recovery</u>

Nothing in this Policy precludes an employee from filing a charge or from participating in an administrative investigation of a charge before an appropriate government agency.   Similarly, this Policy does not preclude the parties from conciliating any charge pending before an appropriate government agency.   Any recovery or relief arising out of employment or cessation of employment with Morton's, however, shall be limited to that awarded by the arbitrator, to the extent permitted by law.

7.   <u>Class Claims/Collective Claims/Consolidation of Claims Brought By Separate Employees</u>

This Policy does not permit the initiation of class claims or collective

claims.  Similarly, consolidation of claims brought by separate employees also is prohibited.

        8.    <u>Consideration</u>

Employee acknowledges that Employee has received fair and adequate consideration for Employee's Agreement to Arbitrate.  This consideration is either hire, promotion, transfer or some other change in Employee's terms and conditions of employment.

        9.    <u>Arbitrator's Authority</u>

The arbitrator shall have no authority to add to, delete from, or modify in any way the provisions of this Policy.

        10.    <u>Contract of Employment</u>

Neither the terms nor conditions described in this Policy are intended to create a contract of employment for a specific duration of time.  Both the Employee and Morton's are free to terminate the employment relationship with or without cause or notice at any time.

        11.    <u>Governing Law</u>

This Policy shall be governed by and shall be interpreted in accordance with the laws of the State of Illinois.

# Exhibit 2



**MORTON'S**
THE STEAKHOUSE

# <u>REQUEST FOR AUTHORIZATION TO HIRE</u>

**Candidate Name:** _Paul D. Turner_     **Restaurant:** _Michigan Ave._

**Candidate SSN:** _370 60 7454_     **Manager:** _Stacee Fin_

**Position Applied For:** _Server_

---

**RECEIPT FOR MANDATORY ARBITRATION POLICY AND PROCEDURE FOR RESOLVING
DISPUTES ARISING OUT OF THE EMPLOYEE'S EMPLOYMENT
OR TERMINATION OF EMPLOYMENT**

I have received today a copy of the Morton's of Chicago _Michigan Ave_ Inc.'s
( print restaurant location )

Mandatory Arbitration Policy and Procedure For Resolving Disputes Arising Out Of The Employee's Employment Or Termination of Employment ("Arbitration Policy"). I understand that the Arbitration Policy cannot be modified except in writing signed by both the President of Morton's and me. I understand that this Arbitration Policy supersedes any and all other agreements, either oral or in writing, express or implied, with respect to the subject matter covered by this Policy. I understand that if any provision of the Arbitration Policy is held by a Court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall, nevertheless, continue in full force without being impaired or invalidated in any way. No statement or representation by a Manager or executive, whether oral or written, can supplement or modify the Arbitration Policy other than in an official revision hereof. I agree to abide by the Arbitration Policy and rules contained therein and with revisions made thereafter.

Date _12/13/04_          Signature _Paul T. Turner_

                         Name (Printed) _Paul D. Turner_

August 2004

Exhibit 3

*January 11, 2005*

*Paul Turner*
*3819 N. Francisco*
*Chicago, IL 60618*

Dear Paul,

We are pleased to welcome you to Morton's, The Steakhouse/Michigan Avenue, the World's Best Steakhouse, and to confirm an offer of employment for the position of Server at $3.49 per hour. This offer is contingent upon successful completion and negative results of a drug screen as well as your acceptance of the Substance Abuse Policy and the Mandatory Arbitration Policy.

You will be scheduled to attend a mandatory Pre-Orientation prior to the beginning of training. Your pre-orientation will be:

January 20, 2005
9:00 am – 12:00 pm

A list of documents needed to verify identity and your eligibility to work in the United States has been provided. You must bring either one document from List A, OR, one from both List B AND List C. Only valid documents will be accepted. No photocopies are allowed. **THIS IS MANDATORY!**

Training information is as follows:

|  |  |
|---|---|
| Date: | February 2, 2005 |
| Time: | 10:00 am |
| Location: | Morton's, The Steakhouse/Michigan Avenue |
|  | 65 E. Wacker Place |
|  | (312) 201-0410 |

The training period will continue for approximately two weeks. Attendance is required for all training days. An outline of the training schedule will be provided to you at Orientation.

If you have any questions or concerns, please do not hesitate to call me at  (312) 201-0410.

Sincerely,
Morton's, The Steakhouse/Michigan Avenue


Julio Dos Santos
General Manager


I accept your offer as contained in this letter dated *January 11, 2005*. I understand that this offer letter is not a contract of employment.

_____                    1/20/05
Employee Signature                                              Date

# Exhibit B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 04-20554-CIV-UNGARO-BENAGES

EHAB IBRAHIM and
MOSTAQUE KHAN, on
behalf of themselves and all others
similarly situated,
     Plaintiffs,

vs.

MORTON'S RESTAURANT GROUP, INC.
MORTON'S OF CHICAGO, INC.,
MORTON'S OF CHICAGO/NORTH MIAMI
BEACH, INC., and
MORTON'S OF CHICAGO/MIAMI, INC.,
     Defendants.

_____/



FILED by _____ D.C.

JUN 1 0 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

THIS CAUSE is before the Court upon Defendants' Motion to Compel Arbitration, filed on April 23, 2004; Plaintiffs' Request for Oral Argument on Defendants' Motion to Compel Arbitration, filed on May 7, 2004.

THE COURT has considered the motion, the request, the pertinent portions of the record and is otherwise fully advised in the premises. Defendants filed the present Motion to Compel Arbitration ("Motion") on April 23, 2004. On May 7, 2004, Plaintiffs filed a Memorandum in Opposition to the Defendants' Motion to Compel Arbitration ("Response") and a Request for Oral Argument on Defendants' Motion to Compel Arbitration. On May 19, 2004, Defendants filed a Reply Memorandum of Law in Support of Their Motion To Compel Arbitration ("Reply"). The matter is ripe for disposition.

## STATEMENT OF FACTS

Plaintiffs, former and current employees of the Defendants, filed this action on March 9,



2004, alleging that the Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§201, *et seq.*[1] As a condition of employment with the Defendants, Plaintiffs signed an agreement

which states in relevant part:

> In the event of any dispute, claim, or controversy including, but not limited to, any
> dispute, claim, or controversy seeking compensatory and/or punitive damages ...
> arising out of any Employee's employment or the cessation of such employment
> with [Defendants], any such claims, on an individual or class basis, shall be
> submitted to final and binding arbitration. Such claims include, but are not limited
> to, any federal, state, or local statutory claims (including, but not limited to ... the
> Fair Labor Standards Act, as amended[.])

*See* Motion at Ex. A, at 1 ("Arbitration Agreement"). The Arbitration Agreement further

provides:

> 2. Rights And Procedure Applying To Arbitration
>
> The following rights and procedures shall apply in any arbitration:
>
> a. Each party shall have the right to assert any claims or defenses in
> the arbitration which could be raised in a court of competent
> jurisdiction;
>
> b. Each party shall have the right to counsel of his/her or [sic] its
> choice;
>
> c. The party that raises a claim in arbitration shall bear the burden of
> proof with respect to that claim;
>
> d. The arbitrator shall have the authority to award such relief as may
> be available in a court of law;
>
> e. Except as otherwise provided herein, the arbitration shall be
> conducted in accordance with the Commercial Arbitration Rule of
> the American Arbitration Association ('AAA') in effect at the time
> a demand for arbitration is made; and

---

[1] Plaintiffs filed an amended complaint on April 5, 2004. *See* DE 9.

2

    f.    The arbitration shall be enforceable pursuant to the Federal
Arbitration Act, 9 U.S.C. §§1, et seq.

*Id.* at 2. The Arbitration Agreement requires that any employee seeking to arbitrate a claim make

a demand for arbitration "no later than three hundred (300) calendar days following the date upon

which the claim arose." *Id.* at 2. The Arbitration Agreement mandates that Defendants pay the

costs associated with the arbitration, "with the exception that the Employee ... pay the first $150

of the costs of commencing arbitration, with [Defendants] paying the remainder of the initial fee."

*Id.* at 4. Relying on the Arbitration Agreement, Defendants now request that this Court issue an

order compelling arbitration.

## LEGAL ANALYSIS

In reviewing arbitration agreements, the Supreme Court has emphasized that courts must

keep in mind that the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* ("FAA")[2] evinces a "liberal

federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp.*, 460 U.S. 1, 24 (1983). In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991),

the Supreme Court, while upholding an arbitration agreement of plaintiff's claim under the

ADEA, stated that "[i]t is by now clear that statutory claims may be the subject of an arbitration

agreement, enforceable pursuant to the FAA." *Id.* at 26. In so holding, the Court concluded that

"'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights

---

[2]    Title 9 U.S.C. §3 states in relevant part that

    [i]f any suit or proceeding be brought in any of the courts of the United
    States upon any issue referable to arbitration under an agreement in writing
    for such arbitration, the court in which suit is pending ... shall on
    application of one of the parties stay the trial of the action until such
    arbitration has been had ...

afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Id.* at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The Court further noted that "'[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.'" *Id.* at 28 (quoting *Mitsubishi Motors*, 473 U.S. at 637). *Gilmer* thus reaffirms the FAA's presumption in favor of enforcing agreements to arbitrate, even those agreements that cover statutory claims.

However, as several courts have noted, this presumption is not without limits. *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) (recognizing FAA presumption in favor of enforcing agreements to arbitrate but "conclud[ing] that it is not without limits."); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997) (noting that "*Gilmer* cannot be read as holding that an arbitration agreement is enforceable no matter what rights it waives or what burdens it imposes."). In fact, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute. Consequently, courts must ensure that the agreement in question is in fact merely a change of forum and not a relinquishment of an individual's substantive statutory rights." *Bailey v. Ameriquest Mortgage Co.*, 2002 WL 100391 (D. Minn. 2002). "This determination, the Supreme Court has observed, must be made on a case by case basis." *Id.* (citing *Gilmer*, 500 U.S. at 33).

First, Plaintiffs argue that the Arbitration Agreement is unenforceable because "[t]he agreement in this case does not permit the arbitrators to enjoin the Defendants' conduct." *See* Response at 4. Plaintiffs' argument is without merit. The Arbitration Agreement states unambiguously that "[t]he arbitrator shall have the authority to award such relief as may be available in a court of law." Arbitration Agreement at 2. Therefore, the undersigned rejects

4

Plaintiffs' first argument that arbitration should not be ordered.

Second, relying on *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003),

Plaintiffs argue that the arbitration agreement is "fatally defective" because it is silent on collective

actions. *See* Response at 5. This Court disagrees because the arbitration agreement in *Ingle* was

noticeably different than the one at issue in this case. Indeed, the arbitration agreement in *Ingle*

"directe[d] arbitrators not to consolidate claims of different employees into one proceeding and

generally prohibite[d] the arbitrator from hearing an arbitration as a class action." *Ingle*, 328 F.3d

at 1175. The Court found "this bar on class-wide arbitration ... patently one-sided, and

conclude[d] that it [was] substantively unconscionable." *Id.* To the contrary, the Arbitration

Agreement in this case contains no such prohibition; in fact, there is nothing in the Arbitration

Agreement that would prevent the arbitrator from hearing the arbitration as a class action.

Third, Plaintiffs argue that the Arbitration Agreement's provision requiring that any

demand for arbitration be made within three hundred days following the date upon which the

claim arose renders the Arbitration Agreement invalid. *See* Response at 6 ("Reducing a

limitations period for a federal statute renders the arbitration agreement invalid."). [4] This Court

---

[4] Plaintiffs rely on *Graham Oil Co. v. Arco Products Co.*, 43 F.3d 1244 (9th Cir. 1995) and *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998) for the proposition that the time limitation contained in the parties' agreement *alone* renders the arbitration agreement unenforceable. *See* Response at 6. Plaintiffs' reliance on *Graham Oil* and *Paladino* is misplaced because these cases are inapposite. In *Graham Oil*, the court found the parties' arbitration agreement invalid because the agreement required the plaintiffs to forfeit (1) the "statutorily-mandated right to recover exemplary damages," (2) the "statutorily-mandated right to recover reasonable attorney's fees," *and* (3) the "statutorily-mandated right to a one-year statute of limitations" by reducing it to ninety days and in some cases six months. *See Paladino*, 134 F.3d at 1247-48. In *Graham Oil*, the court found the parties' arbitration "woefully deficient" because it did not "generally and fairly inform [the plaintiff] ... that it cover[ed] statutory claims such as Title VII claims" and because "it completely proscribe[d] an arbitral award of Title VII damages." *Graham Oil*, 43 F.3d at 1059-60. The Arbitration Agreement in this case contains no

disagrees. It is well settled that parties may contractually shorten a statute of limitations. *See, e.g., Morrison v. Circuit City Stores, Inc.*, 70 F. Supp.2d 815, 822 (S.D. Ohio 1999) (rejecting the plaintiff's claim that arbitration should be denied because the time limit for initiating an arbitration was shorter than that granted under Title VII and finding that the one-year statute of limitations to be "fair and reasonable"); *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988) (finding "nothing inherently unreasonable about a six-month limitations period."). As this Court already found, "there is no evidence to support Plaintiffs' argument that the arbitration agreement should be found unenforceable as either procedurally or substantively unconscionable." *See Joliat v. Morton's Restaurant Group, Inc.*, No. 99-2469-Civ-King, slip op. at 2 (S.D. Fla. Sept. 20, 2000) (considering identical arbitration agreement).

Fourth, Plaintiffs argue that the Arbitration Agreement is unenforceable because "each employee must pay $150 to initiate the proceedings." Response at 6. However, it is well settled that "parties appearing in federal court may be required to assume the cost of filing fees and other administrative expenses, so any reasonable costs of this sort that accompany arbitration are not problematic." *Cole v. Burns Intern. Sec. Services*, 105 F.3d 1465, 1484 (D.C. Cir. 1997); *see also Torrance v. Aames Funding Corp.*, 2002 WL 31971470 (D. Or. 2002) (stating that the cost of filing fees and other administrative expenses are not problematic, in context of inquiry as to unconscionability of arbitration agreement, because federal courts impose such costs as well); *Wilks v. Pep Boys*, 241 F. Supp.2d 860 (M.D. Tenn. 2003) (provision in arbitration agreement between employer and employee, stating that employee could be required to pay arbitration filing fee and that parties would equally share other fees and costs associated with arbitration, did not

---

such provisions

invalidate agreement, where applicable rules of the American Arbitration Association and the Judicial Arbitration and Mediation Services capped or limited fees owed by employees).

Accordingly it is hereby,

ORDERED AND ADJUDGED that Defendants' Motion to Compel Arbitration is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiffs' Request for Oral Argument on Defendants' Motion to Compel Arbitration is DENIED. It is further

ORDERED AND ADJUDGED that this case is STAYED pending completion of arbitration. It is further

ORDERED AND ADJUDGED that the parties SHALL file a Joint Status Report no later than December 10, 2004, indicating the status of the arbitration proceedings. Failure to comply with this Order will result in sanctions including, but not limited to, the dismissal of the case or the striking of Defendants' pleadings and the entry of default judgment, without further notice.

DONE AND ORDERED in Chambers at Miami, Florida, this ___10___ day of June, 2004.

URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record

# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MARK JOHNSON, ET AL.,          )
      Plaintiffs,              )
                              )
      v.                       )    C.A. No. 05-11058-MLW
                              )
MORTON'S RESTAURANT GROUP,     )
INC., ET AL.,                  )
      Defendants.              )

ORDER

WOLF, D.J.                                      January 9, 2006

      The Magistrate Judge reports that the parties have agreed to
arbitrate the dispute involved in this case and no objection has
been filed to her recommendation that it be dismissed without
prejudice.  See Docket No. 29.  Accordingly, this case is hereby
DISMISSED without prejudice.




                              /S/ MARK L. WOLF
                              UNITED STATES DISTRICT JUDGE