IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL TURNER,<br>individually and on behalf of a class of<br>persons similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>MORTON'S RESTAURANT GROUP, INC.,<br><br>        Defendant. | Case No. 1:08 CV 01948<br><br>Judge Matthew F. Kennelly |

**MORTON'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT AND COMPEL ARBITRATION**

      Turner's Response to Morton's Motion to Dismiss concedes (Response at 8) that he agreed to arbitrate "disputes arising out of [his] employment or the termination of employment" with Morton's. Indeed, there is no dispute that Turner signed an acknowledgement form agreeing to abide by Morton's Arbitration Policy, and that his offer of employment, which he also signed, was expressly conditioned on Turner's agreement to arbitrate employment-related disputes. As discussed in the Defendant's Motion to Dismiss (Dkt No. 15), Morton's arbitration agreement, and others like it, have been enforced by courts throughout the country and must be enforced here.

      Indeed, Turner's Response points to no reason why this Court should not enforce his Arbitration Agreement. As an initial matter, Turner attempts to "question" whether the Agreement attached to Morton's Motion to Dismiss is the same one he received at the outset of his employment, but Morton's has submitted a signed declaration confirming that the Agreement was the form in effect when Turner was hired. Turner's attempt to question the authenticity of

the Agreement, without in fact denying that it is the one presented to him, cannot be the basis to deny Morton's Motion to Dismiss. Turner's arguments challenging the procedural and substantive unconscionability of his Arbitration Agreement fair no better. His arguments – such as that the Arbitration Agreement is an unenforceable adhesion contract and that it will require him to incur prohibitive attorneys' fees –have been rejected by the courts that have considered them. And, directly contrary to Turner's arguments, the Illinois Supreme Court and other courts in Illinois have expressly found that employer-generated arbitration agreements are enforceable, and that they are not cost-prohibitive, especially where, as here, the employer bears almost all the cost.

Turner has not, and cannot, offer any basis for this Court to decline to follow the lead of these other courts and refuse to enforce Morton's Arbitration Agreement here. Accordingly, the Court should dismiss Turner's Complaint and order him to submit his claims to individual arbitration.

I.      **PLAINTIFF'S CHALLENGE TO THE AUTHENTICITY OF HIS ARBITRATION AGREEMENT IS WITHOUT MERIT.**

As a threshold matter, there is no dispute that Turner agreed to arbitrate issues related to his employment. On December 13, 2004, he signed Morton's Request for Authorization to Hire form, wherein he acknowledged receipt of Morton's Arbitration Policy, which expressly provides that "disputes arising out of the employee's employment or termination of employment" are subject to arbitration. (*See* Exhibit 2 to Decl.) On January 20, 2005, Turner signed his acceptance of Morton's offer of employment, which was conditioned upon his agreement to abide by Morton's Arbitration Policy. (*See* Exhibit 3 to Decl.) Turner does not dispute that he signed these acknowledgements, nor does he dispute that his Arbitration

Agreement requires employment-related disputes to be submitted to arbitration on an individual basis.

Implicitly conceding the weakness of his argument, in a careful choice of words Turner claims to "question" the authenticity of the attached Agreement. In doing so, he points to a handwritten reference on the acknowledgment form to "Morton's of Chicago Michigan Ave. Inc." as the restaurant location, noting that the legal name of entity on the Arbitration Agreement was "Morton's of Chicago/Wacker Place LLC." (Response at 8.) As Morton's already noted (Decl. at ¶ 4), however, Morton's of Chicago/Wacker Place LLC commonly was referred to by Morton's employees as the "Michigan Avenue" location. Turner does not dispute that he was an employee of Morton's of Chicago/Wacker Place LLC. *Id.* Moreover, no Morton's entity is named "Morton's of Chicago Michigan Ave. Inc." Thus, Turner's attempt to raise a "question" about the authenticity of his Arbitration Agreement based on this handwritten notation is disingenuous at best.

Turner also argues the Arbitration Agreement's reference to the AAA's arbitration rules somehow establishes the Agreement was created on a date after Turner began his employment. (Response at 9.) This argument too lacks merit. The Arbitration Agreement references the "Employment Arbitration Rules of the American Arbitration Association." This clearly was not an attempt to recite the precise name of the AAA's employment arbitration rules because the AAA never has used that name – prior to July 1, 2006, the employment rules were called the "National Rules for the Resolution of Employment Disputes" and since that date they have been called the "Employment Arbitration Rules and Mediation Procedures." (Response Exhibit 1 at 1.) Rather, the Arbitration Agreement's use of the phrase "employment arbitration rules" referenced AAA's employment arbitration rules, as opposed to commercial rules, because, as

Turner points out (Response at 9), the rules were under a comprehensive review at the time of his hire. This generic reference to the AAA's employment arbitration rules hardly establishes that the Agreement was not applicable to Turner.

At bottom, Morton's has established that Turner agreed to arbitrate his employment-related disputes and has provided the Court with a copy of the Arbitration Agreement applicable to him as verified by the Company's Human Resources Information Manager. Turner's Response offers nothing to refute that this Agreement is applicable to him. Turner's employment-related claims accordingly are subject to arbitration.

## II.     TURNER'S ARBITRATION AGREEMENT IS NOT PROCEDURALLY UNCONSCIONABLE.

Turner's additional argument that the Arbitration Agreement is procedurally unconscionable cannot stand. The Illinois Supreme Court has made clear that it will enforce pre-dispute arbitration agreements covering employment claims, even if they are contracts of adhesion and even if they prohibit class or collective claims, if the agreement "is not burdened by other features limiting the ability of the plaintiff to obtain a remedy in a cost-effective manner." *Kinkel v. Cingular Wireless, LLC*, 223 Ill.2d 1, 41 (2006); *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 847 N.E.2d 99 (2006) (upholding the mandatory arbitration agreement in the employment context under the FAA). *See also Jonites v. Exelon Corp.*, 522 F.3d 721, 725-26 (7th Cir. 2008) (finding FLSA claims must be arbitrated pursuant to collective bargaining agreement). Here, Turner clearly can arbitrate his claims in a cost-effective manner and, thus, his Arbitration Agreement is enforceable under Illinois law.

As an initial matter, Turner has no basis to argue that the Arbitration Agreement is procedurally unconscionable as a "contract of adhesion." (Response at 10.) Even if true, assertions that the Agreement was drafted by Morton's and presented to Turner on a take-it-or-

leave it basis (Response at 10) do not establish procedural unconscionability under Illinois law. Indeed, the Illinois Supreme Court expressly rejected such an argument in upholding an arbitration agreement in *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 847 N.E.2d 99 (2006):

> [W]e necessarily reject the appellate court's implication that plaintiff's acceptance of the dispute resolution provisions in this case was illusory by virtue of the fact that Anheuser-Busch gave her little choice in the matter. In other words, because the agreement was offered on a "take it or leave it" basis, the contract is unenforceable. The appellate court's implication here contravenes federal, as well as Illinois, decisional law.

*Id.* at 152, 109. *See also*, *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 366-67 (7th Cir. 1999), *quoting Kewanee Prod. Credit Ass'n v. G. Larson & Sons Farms*, 146 Ill.App.3d 301, 305 (1986) (noting that Illinois law does not void contracts where parties have unequal bargaining power, even if a contract constitutes a so-called "take-it-or-leave it" deal); *Howard v. Stanley*, 2007 WL 1100615, at *3 (S.D. Ill. April 11, 2007) (enforcing agreement to arbitrate and finding fact that agreement may have been a "take-it-or-leave-it" deal does not mean it is a contract of adhesion); *Mitchell v. Verizon Wireless*, 2006 WL 862879, at *2 (N.D. Ill. Mar. 31, 2006), *quoting Streams Sports Club, Ltd. v. Richmond,* 99 Ill.2d 182, 191, 457 N.E.2d 1226 (Ill. 1983) ("In Illinois, '[a] contract is unconscionable when it is improvident, oppressive, or totally one-sided, but mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations' "). Accordingly, Morton's requirement that Turner accept the Arbitration Agreement as a condition of his employment does not make the Agreement unenforceable.

Nor is the Arbitration Agreement procedurally unconscionable because it is "silent about the costs to Plaintiff to utilize the arbitration process." (Response at 11.) As discussed in detail in Morton's Motion to Dismiss (Response at 9), the only cost of arbitration payable by Turner under AAA's employment arbitration rules is a share of the initial case filing fee, which for an individual under an employer promulgated plan is capped at $150. The remainder of the filing

fee, and all other costs associated with the arbitration, including the arbitrator's fees and related costs, are borne by Morton's, which is consistent with Morton's historical practice in individual arbitrations under similar agreements. Courts throughout the country have held time and again that the employer's agreement to pay arbitration costs moots any argument that such costs are prohibitive. *See Livingston, et al v. Associates Finance, Inc., et al*, 339 F.3d 553, 557 (7th Cir. 2003) (finding employer's agreement to pay all costs associated with arbitration "forecloses the possibility" plaintiffs "could endure any prohibitive costs in the arbitration process"); *Carter v. Countrywide Credit Industries, Inc*. 362, F.3d 294, 298 (5th Cir. 2004) (finding "prohibitive costs argument has been mooted by [employer's] representation to the district court that it would pay all arbitration costs" after initial case filing fee). *See also Cole v. Burns Intern. Security Services*, 105 F.3d 1465, 1484-85 (D.C. Cir. 1997) (holding that where arbitration is imposed by the employer, the arbitrator's fees are to be borne solely by the employer).

Along these lines, Turner cannot seriously contend that he is unable to determine his cost to proceed with arbitration because of purported difficulty in assessing whether his claims arise out of an "Employer-Promulgated Plan." (Response at 13.) Turner argues throughout his Response (*see, e.g.,* Response at 10) that the Arbitration Agreement has not "in any way ever been 'negotiated' by a potential or actual employee" but is instead a policy "drafted solely by Morton's" and "presented to Plaintiff on a take-it-or-leave-it basis…." Morton's does not dispute these claims. Turner cannot persuasively argue that there is any question that his Arbitration Agreement falls under AAA's rules governing an employer-promulgated plan. Thus, under AAA's applicable rules, Turner's arbitration costs are capped at $150 and the Arbitration Agreement is not unconscionable.

Plaintiff's case law is not to the contrary. In *Melena*, for example, the Illinois Supreme Court found the employer's arbitration agreement enforceable. *Melena*, 219 Ill.2d at 152-53; 847 N.E.2d at 109. And *Kinkel* exclusively dealt with the enforceability of a class action waiver as part of an arbitration agreement otherwise found to be enforceable. 223 Ill.2d 1, 857 N.E.2d 250. Even with respect to the class action waiver, the Illinois Supreme Court in *Kinkel* found the "degree of procedural unconscionability" resulting from the policy's silence on the costs of arbitration insufficient to render the class action waiver unenforceable. *Id.* at 27, 266. Instead, the court based its ruling upon an express determination that, on the facts of that case, the employees could not vindicate their claims in a cost effective manner. *Id*. at 42, 275. That is not the case here. Turner can arbitrate his claims for three years of unpaid overtime wages, plus an equal amount of liquidated damages, consistent with his Arbitration Agreement for no more than $150. Moreover, if successful on the merits of his FSLA claims, Turner may recover his attorneys' fees and litigation costs at arbitration just as he could in court. As such, there is nothing to prevent Turner from arbitrating his claims in a cost-effective manner, and the Arbitration Agreement is not procedurally unconscionable.

**III.    TURNER'S ARBITRATION AGREEMENT IS NOT SUBSTANTIVELY UNCONSCIONABLE.**

Apparently recognizing the weakness of his individual arguments regarding the substantive unconscionability of his Arbitration Agreement, Turner takes a scattershot approach, putting forth several arguments for substantive unconscionability. None of them, however, salvage his claims here.

Turner first argues the Arbitration Agreement limits his substantive rights and undermines the legislative policy of the FLSA by not allowing him to pursue claims on a class or collective basis. (Response at 14 and 15.) This argument is unsupported by case law and, in

CHI-1658291v1                              7

fact, is directly contrary to the established law in this and other circuits. The Seventh Circuit, for example, squarely has held that an employee – and, in some cases, his union – can waive the right to a judicial forum for FLSA claims and be required to pursue such claims in arbitration. *See Jonites*, 522 F.3d at 725. Similarly, in *Zawikowski v. Beneficial Nat'l Bank*, 1999 WL 35304, at *2 (N.D. Ill. 1999), the Northern District of Illinois noted that "[n]othing prevents the [p]laintiffs from contracting away their right to a class action." Moreover, courts throughout the country have enforced class action waivers in arbitration agreements in the context of FLSA litigation. For example, in *Countrywide Credit*, the court in granting the employer's motion to compel arbitration under an agreement containing a class action waiver, expressly rejected the argument that the inability to proceed collectively deprived the plaintiffs of substantive rights under the FLSA. 362 F.3d at 297. *See also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (enforcing an arbitration agreement containing a class action waiver); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (enforcing arbitration provision contained in employment application).

     Nor is there any basis for Turner's claims (Response at 14-15) that internal inconsistencies in the Arbitration Agreement render it substantively unconscionable. Indeed, while Turner attempts to point to several purported inconsistencies in the Agreement, none of his examples withstand scrutiny. For example, there is no inconsistency in permitting the arbitrator to award the same relief on a claim as would be available in a court of law, while prohibiting the simultaneous arbitration of class or collective claims. Turner's ability to fully recover for his individual claims is a separate issue from his ability to bring claims on behalf of others. Likewise, there is no inconsistency in requiring arbitration to proceed in accordance with the AAA's governing employment arbitration rules while also requiring that any modifications to the

Arbitration Agreement be signed by both Morton's and Turner. This provision is no different than the parties contractually agreeing to abide by a certain forum's laws, which can and do change over time. *See Williams v. Jo-Carroll Energy, Inc.*, --N.E.2D--, 2008 WL 2134095 (Ill.App. 2008) (finding arbitration provision in a cooperative's bylaws was not unconscionable, even though it was added by amendment after the parties entered into an agreement because the parties' agreement specifically provided it was subject to the cooperative's bylaws). In any event, even if there were internal inconsistencies in the Agreement, which there is not, Turner fails to explain how such inconsistencies would be so great as to render the Agreement unconscionable. *See Mitchell*, 2007 WL 862879, at *2 (observing that "[i]t is Plaintiff's burden to prove unconscionability"); *Zobrist v. Verizon Wireless,* 354 Ill.App.3d 1139, 1149, 822 N.E.2d 531 (Ill.App.Ct. 2004) (same).

Turner also argues the Agreement is unconscionable because he must hire an attorney to assist with complex statutory claims, which he contends would be more difficult if he were required to proceed through individual arbitration. (Response at 17.) But, as Morton's noted in its Motion to Dismiss, the Arbitration Agreement provides that "[t]he arbitrator shall have the authority to award such relief … as may be available in a court of law." The FLSA provides for recovery of compensatory damages, liquidated damages, and attorneys' fees for successful litigants. Nowhere does Turner explain why it would be difficult to retain counsel where he has the ability to fully recover all his compensatory damages, plus liquidated damages, attorney's fees and costs.

Similarly, Turner's claim that the case will require extensive discovery for a single plaintiff (Response at 17, 18, and 26) also is unsupported. Indeed, this assertion contradicts Turner's own claims elsewhere in his Response that this is a simple case involving "an

undisputable violation of the [FLSA]," and that "[t]here is no issue about Defendant's liability," which he asserts can be shown through "Defendant's own documents attached to its motion." (Response at 1-2.)   Given the purported ease with which Plaintiff professes to be able to prove his case, and the availability at arbitration of every remedy available in a court of law, the Arbitration Agreement provides a convenient, expeditious and cost efficient manner for Turner to pursue his claims through individual arbitration.  *See Oblix v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) (noting the benefits to employees of arbitration).

Finally, Turner's argument that the Arbitration Agreement is substantively unconscionable because it contains one-sided provisions is without merit.  As set forth in Morton's Motion to Dismiss and discussed below, class action waivers in arbitration agreements are not unconscionable unless under the circumstances of the case there is no cost effective manner for employees to vindicate their statutory rights outside of a class or collective action.  *See Kinkel*, 223 Ill.2d at 41, 857 N.E.2d at 274.  That is not the case here.  Moreover, the provision of the Agreement permitting the parties to recover their fees and costs incurred in compelling arbitration is more than just "reciprocal on its face" – it is of mutual benefit to the parties.  Equally unavailing is Turner's argument the Agreement is unconscionable because of "at least one non-reciprocal provision" in Paragraph A(9).  Plaintiff's argument in this regard ignores the fact that the same paragraph also provides that "any employee who commences a lawsuit against a current or former supervisor or other agent of Morton's in his or her individual capacity based on a claim arising out the Employee's employment or termination" may elect to avail himself of the benefits of arbitration by filing a timely demand.

In the end, Turner can point to no contractual provision, and cites no legal authority, to support a conclusion the Arbitration Agreement is substantively unconscionable. For this reason as well, Morton's Motion to Dismiss should be granted.

### IV.  THE COLLECTIVE AND CLASS ACTION WAIVER IN TURNER'S ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE.

Turner's Response argues the class action waiver in the Arbitration Agreement should be found unconscionable even if the Arbitration Agreement is otherwise enforceable. This argument, however, consistently has been rejected by courts in Illinois and throughout the country that have found class action waivers enforceable, especially in the employment context. *See, e.g, Harris v. The DirectTV Group, Inc.*, Slip Copy, 2008 WL 342973 (N.D.Ill. Feb. 5, 2008) (holding class action waiver enforceable, in part because the plaintiff could recover statutorily authorized attorney's fees and costs if he prevailed in arbitration.); *Caley*, 428 F.3d. at 1377-79 (enforcing mandatory arbitration provision in an FLSA case where arbitration policy, including its prohibition of class actions and limitations on discovery, was not unconscionable under Georgia law); *Countrywide Credit*, 362 F.3d at 298 (granting employer's motion to compel arbitration of an FLSA claim, rejecting plaintiff's argument that the inability to proceed collectively under the arbitration agreement deprived plaintiff of substantive rights available under the FLSA); *Adkins*, 303 F.3d at 502-03 (enforcing mandatory arbitration provision contained in an employment application, finding the arbitration clause was not unconscionable under West Virginia law despite its preclusion of class actions); *Stephens v. Wachovia Corp.*, 2008 WL 686214, at *7 (W.D.N.C. Mar. 7, 2008) (finding class action waiver in arbitration clause of deposit agreement not unconscionable under Alabama law).

The crux of Turner's argument that the class action waiver is unenforceable is that he claims it is silent on arbitration costs. (Response at 24, 26, 27.) But, despite Turner's repeated

citations to *Kinkel*, that case does not stand for the proposition that a class action waiver is unenforceable simply because the arbitration agreement is silent on costs. Rather, *Kinkel* determined that "a class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for a particular claim being asserted in a cost-effective manner." *Id.* at 41, 274. As noted above, the Arbitration Agreement at issue here incorporates the AAA's employment arbitration rules, which expressly cap arbitration costs at $150 for employer-promulgated plans. Thus, Turner clearly can arbitrate his claims in a cost effective manner.

Moreover, *Kinkel* relied on a number of factors not present here in finding the class action prohibition to be unenforceable in the circumstances of that consumer case. For example, unlike in *Kinkel*, Turner's potential recovery is not overwhelmed by his litigation costs. Turner's FLSA claims seek unpaid overtime dating back to 2005, plus liquidated damages, attorneys' fees and litigation costs – if successful, he will be made fully whole. Courts interpreting *Kinkel* have found the recovery of fees a sufficient basis to enforce a class action waiver. *See, e.g., Harris*, 2008 WL 34973 at *5 (holding class action waiver in the parties' arbitration agreement enforceable based in part on plaintiff's entitlement to recover attorney's fees and costs). Also, unlike in *Kinkel*, Turner's Arbitration Agreement does not limit the remedies available to him in arbitration; to the contrary, it provides that "[t]he arbitrator shall have the authority to award such relief … as may be available in a court of law." This is another factor supporting enforceability of the class action waiver. *Id.* And, unlike in *Kinkel*, the Arbitration Agreement does not contain a confidentiality clause that prohibits Plaintiff from disclosing information about the arbitration. *Id.*

At bottom, Turner has no basis to assert that the class action waiver is unenforceable. He can arbitrate his individual claims in a cost-effective manner and the Arbitration Agreement provides him with the opportunity for a full recovery on all his claims. Accordingly, the Court should enforce the clear language of the Arbitration Agreement that Turner signed at the outset of his employment, dismiss the Class Action Complaint, and compel arbitration of Turner's individual claims.

## V.  CONCLUSION

For the foregoing reasons, as well as those set forth in Morton's Memorandum of Law in Support of its Motion to Dismiss, the Court should grant Morton's Motion to Dismiss the Class Action Complaint and Compel Arbitration.

Dated: July 9, 2008                                   Respectfully submitted,

s/ Michael J. Gray
Michael J. Gray, IL No. 06210880
Brent D. Knight, IL No. 6257108
Michael S. Ferrell, IL No. 6277458
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
Telephone:   (312) 782-3939
Facsimile:    (312) 782-8585
mjgray@jonesday.com
bdknight@jonesday.com
mferrell@jonesday.com

*Attorneys for Defendant*
*Morton's Restaurant Group, Inc.*

## CERTIFICATE OF SERVICE

  I hereby certify that on July 9, 2008, I electronically filed the foregoing **Morton's Reply in Support of Motion to Dismiss Class Action Complaint and Compel Arbitration** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

>Jeffrey Grant Brown
>Catherine P. Sons
>Converse & Brown, LLC
>105 West Adams Street, Suite 300
>Chicago, Illinois 60603
>
>James X. Bormes
>Law Office of James X. Bormes, P.C.
>8 South Michigan Avenue, Suite 2600
>Chicago, Illinois 60603
>
>Carol Coplan Babbitt
>Law Office of Carol Coplan Babbitt
>35 East Wacker Drive, Suite 650
>Chicago, Illinois 60601

>s/ Michael S. Ferrell
>Attorney for Defendant